IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTH CAROLINA ELECTRIC & GAS COMPANY and SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-0101C |
| v. | ) | |
| | ) | Judge Charles F. Lettow |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

# JOINT PRELIMINARY STATUS REPORT

Pursuant to the Court's April 26, 2004 Order and the Rules of the United States Court of Federal Claims, Appendix A, South Carolina Electric & Gas Company and South Carolina Public Service Authority (collectively "Plaintiffs") and the United States (the "Defendant") respectfully submit their Joint Preliminary Status Report. Where necessary, the parties set forth separate views regarding issues on which they do not agree.

This action is based upon the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste (the "Standard Contract") executed between Plaintiffs and the United States, acting through the Department of Energy ("DOE"). Sixty-two cases involving the Government's actions in connection with spent nuclear fuel and/or high level waste are pending in the Court of Federal Claims. These cases are sometimes referred to by the parties as spent nuclear fuel ("SNF") cases.

**(a) Does the court have jurisdiction over the action?**

Plaintiffs assert that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1). Defendant asserts that it has not identified any basis at this time upon which to question the Court's jurisdiction to entertain this action.

**(b) Should the case be consolidated with any other cases and the reasons therefor?**

Plaintiffs' View

Plaintiffs do not believe that this case should be consolidated with any other SNF case. The issue of consolidation has been raised by the Government on three separate occasions, extensively briefed, and rejected by this Court. Most recently, on January 30, 2004, the Chief Judge denied the Government's July 30, 2004 Second Motion To Renew Its Motion To Consolidated, explaining, in part:

> consolidation – even as to the particular issues of rate acceptance and schedule of acceptance – would not effectuate any greater efficient administration of justice than that of letting the six lead cases proceed with their dispositive motions and/or trial on damages.

*Yankee Atomic Electric Co. v. United States*, Case No. 98-126C, filed January 30, 2004.

Defendant's View

Defendant has previously requested that the Court reassign all of the spent nuclear fuel cases to a single judge, followed by consolidation for the limited purpose of resolving issues surrounding the spent nuclear fuel acceptance schedule terms of the Standard Contract. The Court has not granted the Government's request. Nevertheless, defendant continues to believe that reassignment and consolidation of the spent nuclear fuel cases, which would permit resolution of issues surrounding the schedule terms that appear in every Standard Contract, is appropriate. Beyond that request for reassignment, defendant has not identified any other case pending before this Court that involves the specific nuclear power plant at issue in this case and, therefore, has not identified any additional reasons for seeking consolidation of this case with any others.

**(c) Should trial of liability and damages be bifurcated and the reasons therefor?**

Plaintiffs' View

Plaintiffs do not believe that trial of liability and trial of damages should be bifurcated in this action. As to liability, the Federal Circuit has already determined that, as a matter of law, the Government breached the Standard Contract by failing to begin accepting SNF by the January 31, 1998 contractual deadline. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000); see also Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000). Plaintiffs disagree with the Government's contention that liability for breach of the Standard Contract cannot be established until a determination is made regarding a rate of acceptance or schedule for acceptance of SNF and high-level waste ("HLW"). Indeed, in the Maine Yankee case, the Federal Circuit affirmed the Government's liability for breach of the Standard Contract notwithstanding that there was no determination in that case regarding the overall rate of acceptance or other schedule issues.[1]

Defendant's View

Liability for partial breach of contract by the Government of its standard contract with SCE&G has not been established. Defendant believes that liability for partial breach of contract cannot be established until a determination is made regarding the minimum mandatory schedule for acceptance of SNF and HLW by which the Government was contractually obligated to accept contract holders' SNF and/or HLW. The Court should resolve issues involving the acceptance schedule under which the Government is obligated, pursuant to the Standard Contract, to accept plaintiff's spent nuclear fuel (including the rate at which the Government is obligated, under the

[1] The issue of rate of acceptance is currently being tried as part of the damages trial in that case. Plaintiffs do not believe that it is necessary for this Court to determine an overall schedule for acceptance to determine damages in this case.

contract, to accept spent nuclear fuel from all of the contract holders). Once the Court resolves those issues, any further trial proceedings regarding liability and damages should be resolved in a single proceeding.

**(d) Should further proceedings in this case be deferred pending consideration of another case before this Court or any other tribunal and the reasons therefore?**

Plaintiffs' View

As stated in Plaintiffs' response to the Government's motion to stay, which this Court denied on April 26, 2004, Plaintiffs oppose a general stay of this case. Plaintiffs believe that certain limited discovery, including the reciprocal disclosures called for by RCFC Rule 26(a) and Plaintiffs' document production, should proceed during the remainder of the year while the *Yankee* and *ComEd* SNF cases are being tried. The Government has agreed that Plaintiffs will be able to use the Government's previous document production in other SNF cases in this action.

With respect to other discovery, including deposition discovery, assuming the Government will stipulate to Plaintiffs' use of previous depositions of DOE and former DOE employees and contractors taken in other SNF cases as if they were taken in these cases, Plaintiffs believe that such discovery can be deferred until after January 2005, after the trials in the *Yankee* and *ComEd* cases are completed. At that time, the parties can commence deposition discovery of plaintiffs' and defendant's witnesses.

In its Motion To Stay All Proceedings Or, In The Alternative, For Coordinated Discovery Regarding Rate And Schedule Issues, Defendant requested a coordinated process for discovery in all of the newly-filed SNF cases if the Court denies its request for a stay. Plaintiffs do not object, in principle, to a coordinated process for depositions of Government witnesses, provided that the coordinated discovery is conducted in an efficient manner. Furthermore, assuming the Government will stipulate to Plaintiffs' use of previous depositions of DOE and former DOE

employees and contractors on the schedule and rate issues taken in other SNF cases as if they were taken in this case, Plaintiffs believe that the need for such depositions can be substantially reduced.

However, Plaintiffs object to the procedure proposed by the Government which would require Plaintiffs to obtain approval from the Court prior to taking any additional discovery by identifying for the Court the additional discovery needed and the reasons the discovery already taken does not satisfy those requirements.

Defendant's View

As previously explained in the Government's motion to stay, a stay of proceedings is necessary in this and the other newly filed cases to allow for the resolution of legal and factual issues that are common to the cases. These issues include the minimum mandatory schedule for the acceptance of SNF and high-level radioactive waste ("HLW") by which the Government was contractually obligated to accept contract holders' SNF and/or HLW; the Government's obligation to accept Greater-Than-Class-C ("GTCC") radioactive waste; and the ability of contract holders to recover damages incurred prior to the actual partial breach of the "Standard Contract for Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," 10 C.F.R. § 961.11, or to recover damages, under a partial breach of contract theory, that contract holders allege might be incurred sometime in the future. These issues have been or will be squarely presented in the trials that are currently scheduled to occur between now and January 2005.

A decision not to stay the newly filed cases will vitiate the "lead" cases process that the Court instituted in response to the Government's previous motion to consolidate the SNF cases. Specifically, the Chief Judge of this Court selected six cases that it identified as "lead" or "accelerated" cases for the purpose of resolving the legal and factual issues that the Government

had presented in various partially-dispositive motions filed in all of the cases existing at that time. One of those cases has already completed a trial regarding the plaintiff's damages, Indiana Michigan Power Co. v United States, No. 98-486C (Fed. Cl.), three others are scheduled for trial beginning July 12, 2004, Yankee Atomic Electric Co. v. United States, No. 98-126C (Fed. Cl.), Connecticut Yankee Atomic Power Co. v. United States, No. 98-154C (Fed. Cl), & Maine Yankee Atomic Power Co. v United States, No. 98-474C (Fed. Cl.); and another "lead" case is scheduled for trial beginning late November 2004, Commonwealth Edison Co. v. United States, No. 98-621C (Fed. Cl.).[2] Given the significance of the issues in these cases, we anticipate that the United States Court of Appeals for the Federal Circuit will review the decisions in those cases and that the Federal Circuit's rulings will provide dispositive guidance regarding the threshold issues in all of the SNF cases pending before this Court.[3]

The Government requests that the stay be entered until March 1, 2005. By this date, all of the currently scheduled trials will be concluded and decisions may be issued in at least some of the cases. At that time, the Court should convene a status conference to determine what further discovery, if any, will be allowed against the Government in a coordinated proceeding and establish an order in which the cases will proceed to trial.

A stay in the instant matter need not preclude all discovery. The plaintiffs may access the discovery previously obtained under the coordinated discovery in the earlier-filed SNF cases subject to the protective order of the coordinated discovery proceedings. This procedure has

---

[2] No further proceedings have been scheduled in Florida Power & Light Co. v. United States, No. 98-483C (Fed. Cl.), the sixth "lead" or "accelerated" case, pending this Court's resolution of pending motions in that case. However, the Court has scheduled trial in Sacramento Municipal Utility District v. United States, No. 98-488C (Fed. Cl.), to begin in late January 2005.

[3] Several of the more recently filed SNF cases have been stayed. See, e.g., Order in Constellation Generation Group, LLC v. United States, No. 04-68C (Fed. Cl. June 30, 2004); Order in Niagara Mohawk Power Corp. v. United States, No. 04-124C (Fed. Cl. June 8, 2004); Order in Arizona Public Serv. Co. v. United States, No. 03-2832C (Fed. Cl. June 4, 2004).

been recommended by the Chief Judge and has been adopted in many of the SNF cases. See e.g., Order in Energy Northwest v. United States, No. 04-10C (Fed. Cl. May 12, 2004).

To the extent that the Court does not stay this case, the Government requests that the Court direct that any discovery sought by SCE&G be conducted on a coordinated basis with the other utility plaintiffs. Without coordination, which would limit the number of hours that any potential deponent would have to sit for deposition and the number of times that the deponent would have to appear, particular witnesses would likely be in repetitive and time-consuming depositions in numerous cases over a course of months or years. The coordinated proceedings would require also that the plaintiffs join together to formulate and serve written discovery requests upon the Government and that counsel for plaintiffs join together to take only one deposition of any Government witness. Absent coordination, the Government will be subject to written discovery requests and Government witnesses will have to sit for deposition in each of these new cases. Proceeding in such a manner will place burdens on the same individuals who are charged with developing and opening a repository so that DOE can meet its obligations pursuant to the Standard Contract at issue.

Further, in light of the extensive discovery that numerous plaintiffs have already obtained from the Government — including written discovery, the production of hundreds of thousands of pages of documents, and numerous extensive depositions — the Court, before SCE&G or any other plaintiff is allowed to take additional discovery (including new depositions), should require SCE&G and the other plaintiffs to identify with specificity the discreet discovery that they need and the reasons that the discovery which has already occurred does not satisfy those requirements. To date, the Government has produced approximately 833,000 pages of documents in the coordinated discovery proceedings and in response to discovery requests

served in the three Yankee cases, Indiana Michigan, Commonwealth Edison, and Sacramento Municipal Utility District v. United States. Sixty-seven depositions of 46 Government witnesses have been taken in coordinated discovery and in Yankee Atomic, Commonwealth Edison, Sacramento Municipal Utility District, and Indiana Michigan. In addition, the Government has provided access to a records database maintained by the Office of Civilian Radioactive Waste Management, the office charged with implementing the terms of the NWPA and the Standard Contracts. These documents and depositions have covered "schedule" issues as well as the Government's expected defenses to the plaintiffs' known damages claims and have been produced and conducted as recently as June of this year. The Government is prepared to provide these same documents, deposition transcripts, and access to counsel for SCE&G and impose no conditions upon the use of this material outside of the requirements and limitations imposed by the Court's rules and the rules of evidence, once the necessary protective orders have been entered. See section (l), below.

**(e) In cases other than tax refund actions, will a remand or suspension be sought and the reasons therefore and the proposed duration?**

Plaintiffs do not intend to seek a remand or suspension. Defendant states that it does not seek a remand of this case at this time, but that the Court should suspend the case for the reasons discussed in the prior section of this report.

**(f) Will additional parties be joined and, if so, a statement describing such parties, their relationship to the case, and the efforts to effect joinder and the schedule proposed to effect joinder?**

Plaintiffs' View

Plaintiffs do not believe that additional parties will be joined. In reference to Defendant's contention below, Plaintiffs do not believe there is any valid factual or legal basis to join General Electric in this case or for Plaintiffs to be joined in any General Electric case.

Defendant's View

Defendant may seek to join General Electric Company to this case or join SCE&G to two cases brought by General Electric pending before the Court (Nos. 04-107C and 04-108C). In the cases brought by General Electric, General Electric claims damages based upon its alleged status as a third-party beneficiary of Standard Contracts into which other nuclear utilities entered with the Government. SCE&G may be one of the contract holders with whom General Electric claims third party beneficiary status. The Government believes that joinder may be necessary to ensure that all claims against the Government arising from the same contract are resolved in a consistent manner. The Government's investigation of this issue continues. If the Court issues a stay in both this case and the cases brought by General Electric, the Government would move to join the parties at the end of the stay if the Government's investigation determines that SCE&G's contract is one over which General Electric claims third party beneficiary status.

**(g) Does either party intend to file a motion pursuant to RCFC 12(b) or 56 and, if so, a schedule for the intended filing?**

At this time, Plaintiffs do not intend to file any motions pursuant to RCFC 12(b) or 56. Plaintiffs believe that the Rule 56 motion regarding plaintiffs' potential recovery of future damages that the Government apparently intends to file is premature at this time because there has not been any discovery regarding plaintiffs' damages.

As noted above, the Government desires this case to be stayed, and therefore desires to defer setting a schedule for the filing of any motions pursuant to RCFC 12(b), 12(c) or 56. The Government believes that the requested stay will help to inform its decision regarding its intent to file such motions, and that it is premature at this time to commit to filing such motions.

Notwithstanding the Government's desired stay, at this time the Government intends to file a RCFC 12(b) motion regarding Plaintiffs' claim of taking without just compensation and, if

Plaintiffs' RCFC 26(a)(1)(c) disclosures contain future damages, a RCFC 56 motion regarding plaintiff's recovery of future or prospective damages. The Government also anticipates that it may file RCFC 56 motions regarding DOE's rate-of-acceptance of SNF and, if appropriate, the Government's obligation to accept GTCC.

**(h) What are the relevant factual and legal issues?**

Plaintiffs' View

Plaintiffs have brought this action to recover damages incurred as a result of the Government's partial breach of the Standard Contract. Plaintiffs believe the relevant factual issues will include the costs plaintiffs have incurred and will incur in connection with the storage of SNF as a result of the Government's breach of the Standard Contract. Plaintiffs believe that the major legal issues – those regarding the Government's breach – have already been determined conclusively as a matter of law. There is also a legal issue regarding whether the Government's conduct constitutes a taking of Plaintiffs' real property. The Government may raise defenses regarding causation of damages that may become factual or legal issues.

Defendant's View

The relevant legal and factual issues in this case include, but may not be limited to, the following:

1. Whether the Government is liable for a partial breach of plaintiff's Standard Contract;

2. The basis and scope of any liability for the partial breach of the Standard Contract;

3. The contractually required schedule for the Department of Energy's acceptance of spent nuclear fuel and/or high-level radioactive waste;

4. The appropriate measure of the plaintiff's damages, if any, arising from any partial breach of the Standard Contract;

5. Whether the Government breached its duty of good faith and fair dealing; and

6. Whether the Government is obligated to accept Greater-Than-Class-C low-level radioactive waste pursuant to the Standard Contract.

7. Whether the Government is liable for taking plaintiffs' real property without just compensation.

**(i) What is the likelihood of settlement? Is alternative dispute resolution contemplated?**

The Parties are open to the possibility of settlement and are willing to engage in settlement discussions and negotiations at an appropriate time.

**(j) Do the parties anticipate proceeding to trial? Does any party, or do the parties jointly, request expedited trial scheduling and, if so, the reasons why the case is appropriate therefore?**

The parties currently anticipate proceeding to trial. The parties do not request expedited trial scheduling, given the guidelines set forth in RCFC App. A, Section III.4(j).

**(k) Are there any special issues regarding electronic case management needs?**

There are no special issues regarding electronic case management needs at this time.

**(l) Is there other information of which the court should be aware at this time?**

The Government is currently working with counsel for plaintiffs' in the recently filed

SNF cases to settle on appropriate language for a protective order. The Government hopes to resolve this issue soon.

Respectfully submitted,

s/ Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile
COUNSEL FOR PLAINTIFFS

Of counsel:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
Donald R. Cassling
Lisa M. Eddington
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

Thomas G. Eppink
SCANA Services, Inc.
Legal Dept. MC-130
Columbia, SC 29218
(803) 217-9448

Stephen R. Pelcher
Santee Cooper
Post Office Box 2946101
Moncks Corner, SC 29461-2901
(843) 761-4016

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

Of counsel:

s/Stephen Finn
STEPHEN FINN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
(202) 616-0466 telephone
(202) 307-2503 fascsimile

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

1115983