IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| SOUTH CAROLINA ELECTRIC & GAS COMPANY and SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, | ) | |
| Plaintiffs, | ) | No. 04-0101C |
| v. | ) | Judge Charles F. Lettow |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER LIMITING THE SCOPE OF TRIAL AND PRESERVING PLAINTIFFS' RIGHT TO BRING SUBSEQUENT ACTIONS FOR DAMAGES INCURRED AFTER DECEMBER 31, 2004**

Plaintiffs South Carolina Gas & Electric Company and South Carolina Public Service Authority (collectively "SCE&G") respectfully move this Court for entry of an order stating that SCE&G shall have the unqualified right to bring subsequent additional legal actions for any and all damages caused by the Government's breach of the Standard Contract incurred or accruing on or after January 1, 2005.[1] If the Court grants SCE&G's motion and enters the requested relief, SCE&G will withdraw from this action any and all claims for damages incurred on or after January 1, 2005. SCE&G respectfully requests that this Court enter the requested order because its provisions are expressly authorized by the treatises and prior opinions by the judges of this Court, and will greatly streamline the discovery and trial in this action. In further support of this motion, SCE&G submits the Proposed Order attached as Exhibit A, which reflects the relief requested by SCE&G as well as SCE&G's agreement to withdraw its post-2004 claims, and SCE&G states:

[1] Plaintiffs had originally anticipated filing this motion much earlier this year, along with a stipulation between the parties regarding this issue. In that connection, Plaintiffs and Defendant have sought for several months to reach agreement on a stipulation regarding this issue. However, because the parties are not able to reach agreement on the language of the proposed stipulation, Plaintiffs elected to file this motion.

## I. Factual And Procedural Background.

As Your Honor knows, this is an action for a partial breach of the Standard Contract for the Disposal of Spent Nuclear Fuel and High-Level Waste ("Standard Contract"). SCE&G owns and operates one nuclear power station, the V.C. Summer Station ("Summer Station") in Jenkinsville, South Carolina. SCE&G entered into the Standard Contract with the Government in 1983. SCE&G has fully performed its obligations under the Standard Contract, and the terms of the Standard Contract required the Government to begin disposal of Spent Nuclear Fuel ("SNF") not later than January 31, 1998. The Government did not begin performance by January 1998, and recently stated that the earliest performance may begin is in 2012, and perhaps as late as 2015. *See, e.g.* March 10, 2005 Statement of Theodore J. Garrish before the Subcommittee on Energy and Air Quality, Committee on Energy and Commerce, U.S. House of Representatives, *available at* http://energycommerce.house.gov/108/Hearings/03102005hearing1450/Garrish2380.htm (last visited May 19, 2005). SCE&G is required by federal law to be a party to the Standard Contract, and federal law also provides that the Government has the sole responsibility for the permanent disposal of SNF. Consequently, SCE&G expects and requires that the Government will ultimately perform all of its obligations under the Standard Contract, but SCE&G has brought this action for partial breach for damages caused by the Government's failure to begin performance by the date specified in the Standard Contract.

As described in SCE&G's Rule 26 initial disclosures, the principal component of the damages SCE&G seeks is the cost of a "re-rack" of the Summer Station's "spent fuel pool" performed between 1999 and 2003. The spent fuel pool is a pool of water designed to hold nuclear fuel which is "spent," that is, no longer useful for the production of electricity. The spent

fuel pool as it was configured at the V.C. Summer station, was designed to hold a specific capacity, and when that capacity is reached, the SNF stored in the pool must be moved, or the reactor can no longer operate.[2] When the Government failed to begin performance in 1998, and announced that it would not begin performance at any time before 2010 (recently extended to at least 2012), SCE&G took steps to permit it to continue operating through 2010 despite the Government's breach. In particular, as a result of the Government's breach, SCE&G commenced the process of re-racking its spent fuel pool in 1999, and substantially completed that project in 2003. In a re-racking process, the space between the spent fuel racks is decreased, permitting the storage of additional SNF in the same-sized pool, and permitting continued operation of the nuclear reactor before the higher capacity spent fuel pool is full. The re-rack permits SCE&G to continue operating its Summer Plant for a substantial period.

However, SCE&G also believes it is far from certain that the Government will commence performance, at the appropriate rate, by 2012. A large number of technical, regulatory, budgetary, judicial and logistical hurdles may prevent the Government from achieving its current goal. Depending on what progress occurs in the program, the Government's continued failure to perform may cause SCE&G to incur additional costs for additional at-reactor storage beyond the re-racking expenses it has already incurred. For example, as indicated in SCE&G's initial disclosures, SCE&G may in the future be required to seek its costs associated with planning and building a dry SNF storage facility, known as an Independent Spent Fuel Storage Facility or "ISFSI," and purchasing and loading SNF storage casks to store SNF at V.C. Summer.

[2] SCE&G, consistent with common industry practice, also maintains a reserve of slots for SNF in the spent fuel pool known as a "full core discharge" reserve, which permits SCE&G to empty the nuclear reactor core for maintenance if necessary.

However, the Government has taken the position in other actions that so-called "future damages" – that is, damages incurred after the filing of the complaint or, alternatively, the end of the trial – are not recoverable as a matter of law in an action for partial breach of the Standard Contract. The Government has also expressed its view that any "future damages" are recoverable, if at all, in a subsequent action for partial breach of the Standard Contract. SCE&G believes that the Government's position barring all future damages is incorrect, and has been rejected by this Court.[3] However, for its part, SCE&G has determined that with an appropriate assurance about its ability to seek "future damages" in a subsequent lawsuit, it is possible that the Court may not need to reach this issue. SCE&G is therefore willing to limit its prayer for damages in this action to those incurred on or before December 31, 2004, if (and only if) SCE&G's right to bring a subsequent action for "future damages" is expressly and fully reserved. With that background, SCE&G respectfully requests that Your Honor enter as an order of the Court the relief specified in the proposed order attached as Exhibit A.

## II. Argument: The Court Should Enter The Requested Relief.

SCE&G respectfully believes that the relief it requests is authorized by law, and should be entered, for three reasons: (1) the right to file any subsequent action for additional partial breaches is expressly recognized by the treatises; (2) the right to file a subsequent action for additional partial breaches has been recognized by the judges of this court, including Your Honor; and (3) as a practical matter, clarifying the parties' rights and obligations so that SCE&G

[3] Judge Merow has twice expressly held that plaintiffs may seek damages resulting from the DOE's failure to perform through 2010, the earliest date that the DOE has estimated it will perform. Yankee Atomic Electric Co. v. United States, No. 98-126C, 2004 WL 1535688 (Fed. Cl. June 28, 2004); Southern Nuclear Operating Co. v. United States, No. 98-614C, (Fed. Cl December 20, 2004). Judge Hodge's opinion after the trial in Indiana Michigan v. United States, 60 Fed. Cl. 639 (Fed. Cl. 2004), which is to the contrary, is currently on appeal before the Federal Circuit.

may withdraw its claims for post-2005 damages in this action will greatly streamline the trial of this matter.

First, the Restatements and Corbin both recognize the a right to file a subsequent action for a partial breach that occurs after this action was instigated. An order like the Exhibit A is expressly contemplated in the Restatement (Second) of Judgments, which has long guided the Federal Circuit in this area, and which guided Your Honor in the decision in Tennessee Valley Authority v. United States, 60 Fed. Cl. 665 (Fed. Cl. 2004) ("TVA"); Ammex, Inc. v. United States, 334 F.3d 1052, 1056 (Fed. Cir. 2003); Young Eng'rs, Inc. v. U.S Int'l Trade Comm'n, 721 F.2d 1305, 1314 (Fed. Cir. 1983). Section 26(1) of the Restatement provides that, in certain circumstances, the general bar on splitting claims will not apply and "part or all of the claim subsists as a possible basis for a second action by the plaintiff against defendant." These circumstances include a situation where:

> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
>
> …
>
> (e) For reasons of substantive policy in a case involving a continuing or recurring wrong, the plaintiff is given an option to sue once for the total harm, both past and prospective, or to sue from time to time for the damages incurred to the date of suit, and chooses the latter course; …

Restatement (Second) of Judgments § 26(1)(b), (e) (1982). In addition, the parties may agree to the splitting of claims, or the defendant may acquiesce. See Restatement (Second) of Judgments § 26(1)(a).

More importantly, black letter law recognizes a subsequent claim for a partial breach of contract as a specific exception to the general prohibition on claim splitting. The comments to Section 26(1)(e) expressly recognize that on a claim for a partial breach of contract – like

SCE&G's claim here – the judgment "does not preclude a further action by [plaintiff] for a breach occurring after that date." Restatement (Second) of Judgments § 26 cmt. g; see also id., illus. 7; TVA, 60 Fed. Cl. at 677. Similarly, Corbin's authoritative treatise recognizes a claim for a partial breach as an exception to the general rule against claim splitting: a non-breaching party "may elect to regard the breach as partial, proceed with his own performance, sue for the partial injury, *and maintain a second suit in case a further breach occurs*." 9 Corbin on Contracts § 949 at 720 (interim ed.) (emphasis added).

Second, the right to file a subsequent action for additional partial breaches has been recognized by the judges of this court, including Your Honor, as well as the Government itself. The ability of a plaintiff prosecuting an action for a partial breach of the Standard Contract to recover future damages in a subsequent action has been addressed – and affirmed – in four recent decisions or orders by judges of this Court:

(1) Your Honor's decision in TVA, which recognized that TVA's claim against the Government for partial breach was a "limited claim, that, by its nature, does not embrace all of TVA's rights and claims for redress with respect to the ongoing TVA Contract" TVA, 60 Fed. Cl. at 677;

(2) Your Honor's decisions in Entergy Nuclear Generation Co. v. United States, 64 Fed. Cl. 223, 345-46 (Fed. Cl. 2005); Entergy Nuclear Indian Point 2, LLC v. United States, 64 Fed. Cl. 515, 525-26 (Fed. Cl. 2005); and Systems Fuels, Inc. v. United States, --- Fed. Cl. ----, 2005 WL 950497 at *13-14 (Fed. Cl. 2005) similarly recognized the right of the plaintiffs in those cases to recover future damages in a subsequent action;

(3) Judge Merow's decision in Yankee Atomic Elec. Co. v. United States, 2004 WL 1535688 at *1 (Fed. Cl. 2004), which relied on and quoted Corbin's proposition that a non-breaching party in an action for partial breach may "maintain a second suit in case a further breach occurs";

(4) Judge Merow's recent order in Southern Nuclear Operating Company et al. v. United States, No. 98-614C, slip op. (Fed. Cl. Dec. 20, 2004), which held, at the plaintiffs' request, that any Government delay "in its obligation to dispose of plaintiffs' [SNF] occurring after 2010 shall comprise a separate cause of action accruing then, and not comprising a part of the current litigation;" and

(5) Judge Braden's order in Sacramento Municipal Utility District v. United States, 98-488C (Fed. Cl. Sep. 27, 2004), which entered a stipulation between the plaintiff and the Government.[4]

Third, as a practical matter, the proposed order will greatly streamline the trial of this matter. In the absence of an express recognition that future damages can be sought in a subsequent action, in order to protect its substantive rights, SCE&G could be forced to seek its future damages in the present case. That would unnecessarily require the resolution of a wide variety of additional legal and factual issues, including the likely date the Government will begin performance under the Standard Contract, the likely future costs of the ISFSI SCE&G would be required to build, appropriate inflation and discount rates, and more. Although all of these issues could be resolved at trial after substantial additional factual and expert discovery, entry of the

[4] As Your Honor may know, there has been some disagreement among the judges regarding a plaintiff's ability to recover "future damages" in a currently-pending action. Compare Yankee, 2005 WL 1535688 at *1-*3 (damages recoverable through 2010) with Indiana Michigan, 60 Fed. Cl. at 642, 664 (no damages recoverable past date of trial). However, as described below, granting this motion would obviate any need Your Honor might otherwise have to decide that issue in this action.

proposed order would permit the litigants and Your Honor to save these questions for another day, and substantially reduce the burden on the Court and the parties.

SCE&G also respectfully requests that the Court include in its order a specification, similar to the one entered by the Court in the TVA case, regarding the statute of limitations. As Your Honor held:

> "Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Section 2501 is "jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived." Hart v. United States, 910 F.2d 815, 818-19 (Fed.Cir.1990). See also Ware v. United States, 57 Fed.Cl. 782, 787 (2003). "[A] claim 'first accrues' when all the events have occurred which fix the alleged liability of the defendant and entitle the plaintiff to institute an action." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed.Cir.1988); see also Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed.Cir.1998). "Generally, '[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs.'" Alder Terrace, 161 F.3d at 1377 (quoting Manufacturers Aircraft Ass'n v. United States, 77 Ct.Cl. 481, 523, 1933 WL 1818 (1933)). However, "a claim does not accrue until the claimant has suffered damages," even if those damages, once suffered, may not be calculated with precision. Alder Terrace, 161 F.3d at 1377 (citing Terteling v. United States, 167 Ct.Cl. 331, 334 F.2d 250, 254 (1964) ("It is too well established to require citation of authority that a claim does not accrue until the claimant has suffered damages."); Alder v. United States, 785 F.2d 1004 (Fed.Cir.1986)). TVA's future claims for its future damages should, therefore, be considered to accrue for purposes of the statute of limitations at the time such damages are incurred. Accordingly, TVA must bring any future actions for damages related to DOE's breach of the Standard Contract within six years of TVA's incurring such damages.

In this case, SCE&G respectfully request that Your Honor include similar language indicating that the statute of limitations will not begin to run on any claim for damages incurred on or after January 1, 2005 until those damages are actually incurred.

## III. CONCLUSION

For the foregoing reasons, SCE&G respectfully requests that the Court grant this motion and enter an order preserving SCE&G's unqualified right to bring subsequent additional legal actions for any and all damages caused by or related to the Government's alleged breach of the Standard Contract incurred or accruing on or after January 1, 2005, and propose entry of the relief reflected in the proposed order attached hereto as Exhibit A as an order of the Court.

Dated: June 2, 2005

Respectfully submitted,

/s Norman M. Hirsch
NORMAN M. HIRSCH
Jenner & Block LLP
One IBM Plaza
330 N. Wabash
Chicago, IL 60611
(312) 923-2782 telephone
(312) 840-7782 facsimile
COUNSEL FOR PLAINTIFFS

Of Counsel:

David A. Handzo
Jenner & Block LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 639-6000

William D. Heinz
David Jiménez-Ekman
Lisa M. Eddington
Christopher Tompkins
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

Thomas G. Eppink
SCANA Services, Inc.
Legal Dept. MC-130
Columbia, SC 29218
(803) 217-9448

Stephen R. Pelcher
Santee Cooper
Post Office Box 2946101
Moncks Corner, SC 29461-2901
(843) 761-4016

**CERTIFICATE OF FILING AND CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of June, 2005, a copy of foregoing "PLAINTIFFS' MOTION FOR ENTRY OF AN ORDER LIMITING THE SCOPE OF TRIAL AND PRESERVING PLAINTIFFS' RIGHT TO BRING SUBSEQUENT ACTIONS FOR DAMAGES INCURRED AFTER DECEMBER 31, 2004" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Norman M. Hirsch